LAUREN M. BLAS (SBN 296823)
   lblas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000
Fax: (213) 229-7250

MITCHELL A. KARLAN (*pro hac vice to be requested*)
   mkarlan@gibsondunn.com
WILLIAM J. MOCCIA (*pro hac vice to be requested*)
   wmoccia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Plaintiffs Baltequera Inc.,
Dcoop, S. Coop. And., and Olives Way LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BALTEQUERA INC., DCOOP, S. COOP. AND., and OLIVES WAY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BELL-CARTER FOODS, LLC, BELL-CARTER GROUP, INC., TIMOTHY T. CARTER, and PAUL ADCOCK,<br><br>Defendants. | Case No. 3:21-cv-06368<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

This is an action by a minority interest holder of a private company against the persons and entities who induced it to purchase its minority stake for $15 million with false and misleading statements, all with the intention of forcing a redemption of those membership interests shortly thereafter at a fraction of the purchase price. Through this scheme, the defendants were able to access badly needed working capital essentially for free. Plaintiffs seek rescission, restitution, and compensatory and punitive damages.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because the claims asserted arise under the laws of the United States, and pursuant to 28 U.S.C. Section 1367 because the related state law claims form part of the same case or controversy.

2. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) and (c), and pursuant to agreements between the parties, discussed below.

3. **Intradistrict Assignment:** This lawsuit should be assigned to the Oakland Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Contra Costa County.

**THE PARTIES**

A. The Issuer and Its Controlling Persons

4. Defendant Bell-Carter Foods, LLC ("Carter Foods") is a limited liability company organized under the laws of California with its principal place of business in California.

5. Defendant Bell-Carter Group, Inc. ("Carter Group") is a corporation organized under the laws of California with its principal place of business in California. It owns 80% of the membership interests in Carter Foods and, until the events described below, was the sole member.

6. Carter Foods produces and sells table olives. Now over 100 years old, it is the country's largest canner of table olives.

7. Defendant Timothy T. Carter ("Carter") is a citizen and resident of California. He is a member of the fourth generation of the founding families of Carter Foods and Carter Group. He is Chief Executive Officer of both companies, and dominates and controls them.

8. Defendant Paul Adcock ("Adcock") is a citizen and resident of California. He is the Chief Financial Officer of Carter Foods. He serves at the pleasure of Carter.

B. The Purchaser and Minority Interest Holder

9. Plaintiff Baltequera Inc. ("Baltequera") is a corporation organized under the laws of Delaware with its principal place of business in Maryland. Baltequera owns 20% of the membership interests of Defendant Carter Foods, and was created by its two owners for that purpose.

Gibson, Dunn & Crutcher LLP

10. Plaintiff Dcoop, S. Coop. And. ("Dcoop") is a cooperative organized under the laws of Spain with its principal place of business in Spain. Dcoop owns 50% of the common stock of Baltequera and was one of the founders. The members of the cooperative include tens of thousands of farmers whose produce the cooperative sells around the world.

11. Plaintiff Olives Way LLC ("Olives Way") is a limited liability company organized under the laws of Delaware with its principal place of business in Maryland. Olives Way owns the other 50% of the common stock of Baltequera and was one the founders.

## THE RELEVANT TRANSACTIONS AND AGREEMENTS

12. On August 21, 2018, Baltequera and Carter Foods executed a Purchase Agreement (the "Purchase Agreement"), pursuant to which Baltequera paid $15 million to acquire 20% of the membership interests in Carter Foods. Carter signed the Purchase Agreement for Carter Foods. Dcoop and Olives Way provided the capital to Baltequera with which it made the purchase.

13. Carter Foods and Carter Group (as Carter Foods's sole member at the time of the deal) represented in the Purchase Agreement that the financial books and records of Carter Foods and its subsidiaries "fairly reflect" their "assets and liabilities."

14. This representation was false when made and Defendants knew it to be false or were reckless as to its falsity. Defendants made this representation to induce Baltequera to pay Carter Foods $15 million. This representation was material to Baltequera's decision to purchase 20% of Carter Foods. Plaintiffs reasonably relied on this representation.

15. Carter Foods and Carter Group (as Carter Foods's sole member at the time of the deal) represented in the Purchase Agreement that "[a]ll projections, estimates, financial plans or budgets previously delivered to or made available to [Baltequera] were based upon reasonable assumptions in light of all material facts and circumstances at the time made and were provided to [Baltequera] in good faith."

16. This representation was false when made and Defendants knew it to be false or were reckless as to its falsity. Defendants made this representation to induce Baltequera to pay Carter Foods $15 million. This representation was material to Baltequera's decision to purchase 20% of Carter Foods. Plaintiffs reasonably relied on this representation.

17. At the same time, the parties also executed an Amended and Restated Operating Agreement of Bell-Carter Foods, LLC (the "Operating Agreement"). Dcoop contemporaneously entered into several additional agreements to sell, under certain conditions and terms, olives to Carter Foods (the "Supply Agreements"). The Supply Agreements were for an initial term of only three years and also provided that they could be terminated sooner than that by Carter Foods under certain circumstances.

18. The Operating Agreement and Supply Agreements were an essential element of defendants' fraudulent scheme because the Operating Agreement also provided that, upon either the expiration or termination of the Supply Agreements, Carter Foods could "redeem" Baltequera's 20% stake for its "fair market value" at the time of the proposed redemption. In June 2020, Defendants alleged that they had the immediate right to redeem Baltequera's interests and indicated that those interests had virtually no value.

**DEFENDANTS' FALSE AND MISLEADING STATEMENTS ABOUT THE BUSINESS**

19. In May 2018, during negotiations that lead to the Purchase Agreement, Defendants gave Plaintiffs an Excel spreadsheet purporting to show three years of historical financial results for Carter Foods. Carter and Adcock authored the document. The spreadsheet stated that Carter Foods's inventory was properly valued at $140 million.

20. This figure was grossly inflated. Defendants knew or were reckless in not knowing that the inventory of Carter Foods included large quantities of aging, perishable fruit that becomes unmarketable with the passage of time and yet was carried on Carter Foods's financial statements at full replacement value. Defendants did not make their representations about the value of the inventory to Plaintiffs in good faith. The representation about the value of the inventory was not based on reasonable assumptions at the time made in light of all material facts and circumstances.

21. In late June 2018, Carter informed Plaintiffs that he and Adcock, who would be "the lead on the financial and legal aspects of the due diligence," were preparing a "financial model" with projected financial results for the next three years, which they planned to discuss with Plaintiffs. The following week, in July 2018, still during the pre-signing negotiations, Carter sent Plaintiffs a "financial forecast" that Carter described as "very conservative." Defendants told Plaintiffs in this

Gibson, Dunn &
Crutcher LLP

4
COMPLAINT

1  document that Carter Foods's EBITDA for the years 2018 through 2021 would be $4.4 million, $9.2 million, $14.1 million, and $15.2 million.

22. Defendants did not give these projections to Plaintiffs in good faith. The projections were not based on reasonable assumptions at the time made in light of all material facts and circumstances.

23. Plaintiffs reasonably relied on the May spreadsheet and the July forecasts in deciding to purchase 20% of Carter Foods and in agreeing on the price for that stake.

**THE TRUTH ABOUT THE FINANCIAL CONDITION OF
CARTER FOODS AND CARTER GROUP**

24. Carter Foods' actual EBITDA for fiscal years 2018 through 2020 was ($5 million), ($11 million), and ($1.9 million).

25. Given how impossibly far off the projections Defendants provided in July 2018 were from reality, the fact that Carter Foods did not even come remotely close to hitting those projections in any single year (including 2018, which was already more than halfway over by the time the projections were given to Plaintiffs), and the fact that Defendants have never explained how they missed by so much or why they thought the projections complied with the contractual representations in the Purchase Agreement, Defendants necessarily knew (or were beyond reckless in not knowing) that their representations were false when made.

26. After getting Plaintiffs' $15 million, Defendants never again reported the value of their inventory at any level remotely as high as they projected to Plaintiffs.

27. Given how wildly overstated Defendants' representations as to inventory value were, it cannot possibly be the case that those misrepresentations were anything other than intentional or incomprehensibly reckless. The size of the overstatements further confirms that Defendants knew that Carter Foods's books and records did not "fairly reflect" the company's "assets and liabilities" at the time the Purchase Agreement was signed.

28. Defendants' improper efforts to "redeem" Baltequera's membership interests in June 2020 confirm that all of the conduct described herein was part of a fraudulent scheme by Defendants to effectively steal Plaintiffs' money for nothing. And because Carter Foods and Carter Group are

private companies, the $15 million that Defendants secured through that scheme essentially went into the families' pockets.

### FIRST CLAIM FOR RELIEF
(*Asserted Against All Defendants*)
VIOLATION OF § 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

29. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

30. Defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 in that they:

    a. Employed devices, schemes, and artifices to defraud;

    b. Made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances in which they were made, not misleading; and/or

    c. Engaged in acts, practices and a course of business that operated as a fraud or deceit on Plaintiffs in connection with Baltequera's purchase of membership interests in Carter Foods.

31. Specifically, Defendants knowingly or recklessly misrepresented information regarding (a) the value of Carter Foods's inventory, and (b) Carter Foods's expected future earnings, which projections were purportedly based on facts about the company's then-current financial position.

32. These representations were knowingly false when made or else were made in reckless disregard for the truth. Specifically, Defendants knew or recklessly disregarded that (1) the value of Carter Foods's inventory should have been written down substantially in order to account for the fact that the inventory included massive quantities of fruit and finished products that would not actually be salable (or at least not at the prices reflected in the valuation); and (2) Carter Foods was not actually capable of coming anywhere close to its revenue and earnings projections.

33. These representations about Carter Foods's financial condition were material to, and intended to induce, Plaintiffs' decision to pay $15 million, through Baltequera, to acquire interests in Carter Foods. Plaintiffs justifiably relied on these representations. But for Defendants' knowingly or

recklessly false misrepresentations and omissions, Plaintiffs would not have agreed to the terms of the Purchase Agreement and would not have paid $15 million to Defendants through Baltequera.

34. As a direct and proximate result of Defendants' knowingly false statements, Plaintiffs suffered damages by being induced to pay $15 million, through Baltequera, to acquire interests in Carter Foods. Plaintiffs would not have purchased those interests at all, or else would have paid less than they ultimately did, had they been aware that Defendants had wrongfully inflated the value of Carter Foods's inventory and had been untruthful and omitted material information in making projections about Carter Foods's anticipated future revenue and earnings, contrary to the express representations contained in the Purchase Agreement.

**SECOND CLAIM FOR RELIEF**
(*Asserted Against Carter and Adcock*)
VIOLATION OF § 20(a) OF THE EXCHANGE ACT

35. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

36. As alleged above, Defendants violated Section 10(b) of the Exchange Act by virtue of the knowing and reckless misrepresentations that they made to Plaintiffs in order to induce Plaintiffs to purchase membership interests in Carter Foods.

37. Carter and Adcock acted as control persons of Carter Foods and (in the case of Carter) Carter Group within the meaning of § 20(a) of the Exchange Act.

38. By virtue of his position as CEO of both Carter Foods and Carter Group and his power to control statements made by and about those companies, Carter had the power and ability to control—and did control—the actions of Carter Foods, Carter Group, and their employees. Carter thus had the power and authority to cause (or prevent) Carter Foods and Carter Group from engaging in the wrongful and fraudulent conduct at issue here. By reason of such conduct, Carter is liable pursuant to § 20(a) of the Exchange Act.

39. Similarly, by virtue of his position as CFO of Bell-Carter Foods and his power to control statements made by and about those companies, Adcock had the power and ability to control—and did control—the actions of Carter Foods and its employees. Adcock thus had the power and authority to cause (or prevent) Carter Foods from engaging in the wrongful and fraudulent

conduct at issue here.  By reason of such conduct, Adcock is liable pursuant to § 20(a) of the Exchange Act.

## THIRD CLAIM FOR RELIEF
(*Asserted Against All Defendants*)
<u>INTENTIONAL MISREPRESENTATION</u>

40. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

41. Defendants knowingly or recklessly misrepresented information regarding (a) the value of Carter Foods's inventory and (b) Carter Foods's expected future earnings, which projections were purportedly based on facts about the company's then-current financial position.

42. These representations were knowingly false when made or else were made in reckless disregard for the truth.  Specifically, Defendants knew or recklessly disregarded that (1) the value of Carter Foods's inventory should have been written down substantially in order to account for the fact that the inventory included massive quantities of fruit and finished products that would not actually be salable (or at least not at the prices reflected in the valuation); and (2) Carter Foods was not actually capable of coming anywhere close to its revenue and earnings projections.

43. These representations about Carter Foods's financial condition were material to, and intended to induce, Plaintiffs' decision to pay $15 million to Defendants through Baltequera. Plaintiffs justifiably relied on these representations, and that reliance was a substantial factor in causing the harms alleged herein.  But for Defendants' knowingly or recklessly false misrepresentations and omissions, Plaintiffs would not have agreed to the terms of the Purchase Agreement and would not have paid $15 million to Defendants through Baltequera.

44. As a direct and proximate result of Defendants' knowingly false statements, Plaintiffs suffered damages by being induced to pay $15 million, through Baltequera, to acquire interests in Carter Foods.  Plaintiffs would not have purchased those interests at all, or else would have paid less than they ultimately did, had they been aware that Defendants had wrongfully inflated the value of Carter Foods's inventory and had been untruthful and omitted material information in making projections about Carter Foods's anticipated future revenue and earnings, contrary to the express representations contained in the Purchase Agreement.

## FOURTH CLAIM FOR RELIEF
(*Asserted Against All Defendants*)
NEGLIGENT MISREPRESENTATION

45. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

46. The Defendants made statements about Carter Foods's financial health and future earnings, without reasonable grounds for believing those statements to be true, in order to induce Plaintiffs to purchase a 20% stake in Carter Foods.

47. A reasonable person in Defendants' position would have known these representations were false when made. Specifically, any reasonable person in their position would have known that (1) the value of Carter Foods's inventory should have been written down substantially in order to account for the fact that the inventory included massive quantities of fruit and finished products that would not actually be salable (or at least not at the prices reflected in the valuation); and (2) Carter Foods was not actually capable of coming anywhere close to its revenue and earnings projections.

48. These representations about Carter Foods's financial condition were material to, and intended to induce, Plaintiffs' decision to pay $15 million to Defendants through Baltequera. Plaintiffs justifiably relied on these representations, and that reliance was a substantial factor in causing the harms alleged herein. But for Defendants' misrepresentations and omissions, Plaintiffs would not have agreed to the terms of the Purchase Agreement and would not have paid $15 million to Defendants through Baltequera.

49. As a direct and proximate result of Defendants' false statements, which a reasonable person in their position would have known to be false, Plaintiffs suffered damages by being induced to pay $15 million, through Baltequera, to acquire interests in Carter Foods. Plaintiffs would not have purchased those interests at all, or else would have paid less than they ultimately did, had they been aware that Defendants had inflated the value of Carter Foods's inventory, had provided false information, and had omitted material information in making projections about Carter Foods's anticipated future revenue and earnings, contrary to the express representations contained in the Purchase Agreement.

**FIFTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
<u>FRAUDULENT CONCEALMENT</u>

50. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

51. During the course of the parties' pre-transaction negotiations, Defendants purported to provide Plaintiffs with information regarding (a) the value of Carter Foods's inventory and (b) Carter Foods's expected future earnings, which projections were purportedly based on facts about the company's then-current financial position.

52. These representations were likely to, were intended to, and did mislead Plaintiffs because Defendants intentionally failed to disclose that (1) the value of Carter Foods's inventory should have been written down substantially in order to account for the fact that the inventory included massive quantities of fruit and finished products that would not actually be salable (or at least not at the prices reflected in the valuation); and (2) Carter Foods was not actually capable of coming anywhere close to its revenue and earnings projections.

53. Defendants had a duty to disclose these facts that they omitted from their communications with Plaintiffs. The undisclosed facts were known or accessible only to Defendants. Defendants made affirmative representations without disclosing facts which materially qualified the facts disclosed, or which rendered their disclosures likely to mislead.

54. Defendants' concealment was intended to induce Plaintiffs' decision to pay $15 million to Defendants through Baltequera. Plaintiffs did not know of the concealed facts and, had the omitted information been known, would have behaved differently as a result, such that Defendants' concealment was a substantial factor in causing the harms alleged herein. But for Defendants' concealment, Plaintiffs would not have agreed to the terms of the Purchase Agreement and would not have paid $15 million to Defendants through Baltequera.

55. As a direct and proximate result of Defendants' concealment, Plaintiffs suffered damages by being induced to pay $15 million to Defendants in reliance on Defendants' incomplete and misleading representations. Plaintiffs would not have purchased membership interests in Carter Foods at all, or else would have paid Defendants less than they ultimately did, had they been aware

that massive quantities of Carter Foods's inventory would not be salable and thus needed to be written down and that Defendants had omitted material information in making projections about Carter Foods's anticipated future revenue and earnings, contrary to the express representations contained in the Purchase Agreement.

**SIXTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
<u>VIOLATION OF CAL. CORP. CODE §§ 25401 AND 25501</u>

56. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

57. Defendants offered to sell, and did sell, Carter Foods securities to Plaintiffs, within the state of California, by means of communications that included untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

58. Specifically, Defendants made untrue statements regarding (a) the value of Carter Foods's inventory and (b) Carter Foods's expected future earnings, which projections were purportedly based on facts about the company's then-current financial position. These untrue statements about Carter Foods's financial condition were material to Plaintiffs' decision to purchase 20% of the membership interests in Carter Foods, through Baltequera, in exchange for $15 million.

59. By virtue of these untrue statements of material fact, Defendants are strictly liable under California Corporations Code Section 25401.

60. Each Defendant materially assisted in this violation of California Corporations Code Section 25401 with intent to deceive or defraud Plaintiffs, and thus is jointly and severally liable for the violation pursuant to California Corporations Code Section 25504.1. Additionally, because Carter and Adcock acted as control persons of Carter Foods and (in the case of Carter) Carter Group, as described above, Carter and Adcock are jointly and severally liable for the violation pursuant to California Corporations Code Section 25504.

61. Because Baltequera still owns its membership interests in Carter Foods, Plaintiffs are entitled to rescission under California Corporations Code Section 25501.

62. In the alternative, if Defendants force a redemption of Baltequera's membership interests such that Baltequera no longer owns 20% of the membership interests in Carter Foods at the conclusion of this action, and if the redemption price is less than the $15 million purchase price Baltequera paid to acquire those securities, Plaintiffs shall be entitled to recover damages under California Corporations Code Section 25501.

**SEVENTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
<u>VIOLATION OF CAL. CORP. CODE §§ 25400(d) AND 25500</u>

63. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

64. Defendants offered to sell, and did sell, Carter Foods securities to Plaintiffs, within the state of California, as set forth herein.

65. Defendants directly and/or indirectly, for the purpose of inducing Plaintiffs to purchase membership interests in Carter Foods, made or materially participated in making the false and misleading statements alleged herein, each of which contained false or misleading statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66. Defendants made these statements with the intent to induce Plaintiffs to purchase membership interests in Carter Foods.

67. Defendants knew or had reasonable grounds to believe that these statements and omissions were false and misleading.

68. As a direct and proximate result of Defendants' fraudulent conduct, in which each Defendant was a willing participant, Plaintiffs suffered damages by being induced to pay $15 million, through Baltequera, to acquire interests in Carter Foods. Plaintiffs would not have purchased those interests at all, or else would have paid Defendants less than they ultimately did, had they been aware that Defendants had knowingly inflated the value of Carter Foods's inventory and had been untruthful and omitted material information in making projections about Carter Foods's anticipated future revenue and earnings, contrary to the express representations contained in the Purchase Agreement.

**EIGHTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
VIOLATION OF CAL. CORP. CODE § 25403

69. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

70. As alleged herein, Defendants' misconduct in connection with their sale of membership interests in Carter Foods violated California Corporations Code Sections 25400(d) and 25401.

71. Each Defendant knowingly provided substantial assistance to the other Defendants in connection with those violations and is therefore further liable for those violations pursuant to California Corporations Code Section 25403(b).

72. In addition, by virtue of his position as the CEO who dominates both Carter Foods and Carter Group, who led the negotiations with Plaintiffs, and who co-authored the misleading representations in question, Carter knowingly controlled and induced those Defendants to commit the violations alleged herein. For this additional reason, and pursuant to California Corporations Code Section 25403(a), Carter is liable for those violations.

73. Likewise, by virtue of his position as the CFO of Carter Foods who played a leading role in the financial aspects of the due diligence process and co-authored the misleading representations in question, Adcock knowingly controlled and induced Carter Foods to commit those violations. For this additional reason, and pursuant to California Corporations Code Section 25403(a), Adcock is liable for those violations.

**NINTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
FRAUDULENT INDUCEMENT; RESCISSION UNDER CAL. CIV. CODE §§ 1688 *ET SEQ.*

74. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

75. Defendants fraudulently induced Plaintiffs to enter into the Purchase Agreement through intentional misrepresentations and omissions. Defendants had a duty to disclose the facts that they omitted from their communications with Plaintiffs because the undisclosed facts were known or accessible only to Defendants, and they made affirmative representations without

disclosing facts which materially qualified the facts disclosed, or which rendered their disclosures likely to mislead.

76.   Specifically, in order to deceive Plaintiffs and induce Plaintiffs' reliance, Defendants knowingly misrepresented information regarding (a) the value of Carter Foods's inventory and (b) Carter Foods's expected future earnings, which projections were purportedly based on facts about the company's then-current financial position.

77.   These representations were knowingly false when made, as Defendants knew that (1) the value of Carter Foods's inventory should have been written down substantially in order to account for the fact that the inventory included massive quantities of fruit and finished products that would not actually be salable (or at least not at the prices reflected in the valuation); and (2) Carter Foods was not actually capable of coming anywhere close to its revenue and earnings projections.

78.   These representations about Carter Foods's financial condition were material to, and intended to induce, Plaintiffs' decision to pay $15 million, through Baltequera, to acquire interests in Carter Foods.  Plaintiffs justifiably relied on these representations.  But for Defendants' knowingly false misrepresentations and omissions, Plaintiffs would not have agreed to the terms of the Purchase Agreement and would not have paid $15 million to Defendants through Baltequera.

79.   As a direct and proximate result of Defendants' knowingly false statements, Plaintiffs suffered damages as alleged herein.

80.   Plaintiffs intend service of the summons and complaint in this action to serve as notice of rescission of the Purchase Agreement, and hereby demand that Defendants restore to them the consideration furnished by Plaintiffs.

**TENTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
UNFAIR COMPETITION – CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*

81.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

82.   Defendants' unlawful, unfair, and/or fraudulent business acts and practices described herein directly and proximately caused, and were intended to cause, Plaintiffs to pay more than they otherwise would have paid to acquire 20% of the membership interests in Carter Foods.  Specifically,

during their pre-deal negotiations with Plaintiffs, Defendants misrepresented information regarding (a) the value of Carter Foods's inventory and (b) Carter Foods's expected future earnings, which projections were purportedly based on facts about the company's then-current financial position.

83. Defendants made these representations in order to induce Plaintiffs to pay $15 million in exchange for Baltequera's 20% stake in Carter Foods, even though Defendants knew or recklessly disregarded that (1) the value of Carter Foods's inventory should have been written down substantially in order to account for the fact that the inventory included massive quantities of fruit and finished products that would not actually be salable (or at least not at the prices reflected in the valuation); and (2) Carter Foods was not actually capable of coming anywhere close to its revenue and earnings projections.

84. Defendants thereby conspired to and did defraud Plaintiffs, in violation of numerous federal and state statutes, as alleged above. Defendants also engaged in common law fraud as alleged herein. Such acts constitute an unfair, unlawful, and/or fraudulent business practice within the meaning of California Business and Professions Code Section 17200.

85. As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent business acts and practices, Plaintiffs have been injured in their business and property by being induced to pay $15 million, through Baltequera, to acquire interests in Carter Foods. Plaintiffs would not have purchased those interests at all, or else would have paid less than they ultimately did, had they been aware that Defendants had wrongfully inflated the value of Carter Foods's inventory and had been untruthful and omitted material information in making projections about Carter Foods's anticipated future revenue and earnings, contrary to the express representations contained in the Purchase Agreement.

86. Plaintiffs are entitled to restitution to remedy this injury to their business and property.

**ELEVENTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
<u>CIVIL CONSPIRACY</u>

87. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

88. As set forth herein, Defendants engaged in fraudulent acts and unfair business practices by virtue of which Plaintiffs suffered damages when they paid $15 million to Defendants through Baltequera.

89. Each Defendant is responsible for the harms alleged herein because each Defendant was aware that the others intended to defraud Plaintiffs and agreed and intended that the fraud be committed.

90. The Defendants include an operating company (Carter Foods); its majority member and sole member during the pre-transaction time period at issue (Carter Group); the CEO who dominates both entities, led the negotiations with Plaintiffs, and co-authored the misleading representations in question (Carter); and the Carter Foods CFO who serves at the pleasure of Carter, was held out by Carter as playing a leading role in the financial aspects of the due diligence process, and co-authored the misleading representations in question (Adcock).  Moreover, because Carter Group and Carter Foods are privately held, the proceeds of the fraud inured entirely to Carter's family.

91. Accordingly, the circumstances of the fraud, the nature of the wrongful acts in question, and the relationships among and interests of the various Defendants all support the conclusion that each agreed, expressly or tacitly, to the commission of the wrongful acts alleged herein and acted in concert with one another to accomplish their unlawful scheme.

92. As a direct and proximate result of the wrongful acts alleged herein, which Defendants undertook in furtherance of their conspiracy, Plaintiffs suffered damages by being induced to pay $15 million, through Baltequera, to acquire interests in Carter Foods.

**TWELFTH CLAIM FOR RELIEF**
(*Asserted Against All Defendants*)
<u>AIDING AND ABETTING</u>

93. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

94. As set forth herein, Defendants engaged in fraudulent acts and unfair business practices by virtue of which Plaintiffs suffered damages when they paid $15 million to Defendants.

95. The Defendants include an operating company (Carter Foods); its majority member and sole member during the pre-transaction time period at issue (Carter Group); the CEO who dominates both entities, led the negotiations with Plaintiffs, and co-authored the misleading representations in question (Carter); and the Carter Foods CFO who serves at the pleasure of Carter, was held out by Carter as playing a leading role in the financial aspects of the due diligence process, and co-authored the misleading representations in question (Adcock).

96. By virtue of their positions and relationships with one another, each Defendant necessarily acted with knowledge of the others' unlawful conduct and provided substantial assistance and encouragement to the other Defendants in their commission of those wrongful acts.  In the case of Carter and Adcock, this included preparing the false and misleading financial statements and projections discussed herein and, in the case of Carter, signing contracts that he knew contained materially false representations as to the financial condition of Carter Foods.  This conduct was a substantial factor in causing the harms that Plaintiffs have alleged herein.

97. Accordingly, each Defendant aided and abetted the others' commission of fraud and violation of the Unfair Competition Law, and each Defendant is therefore jointly liable for the relief Plaintiffs seek.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and:

1. Award compensatory and punitive damages to Plaintiffs for Defendants' fraud;
2. Award rescission and order Defendants to return the $15 million purchase price to Plaintiffs;
3. Award restitution to Plaintiffs for the monies that Defendants unlawfully obtained in violation of the UCL;
4. Award prejudgment interest and post-judgment interest on any monetary awards at the applicable legal rate;
5. Award costs and disbursements;
6. Grant such further relief as the Court deems just and proper.

Dated: August 18, 2021

                                        GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Lauren M. Blas*
      Lauren M. Blas (SBN 296823)
      Mitchell A. Karlan (*pro hac vice to be requested*)
      William J. Moccia (*pro hac vice to be requested*)

Attorneys for Plaintiffs Baltequera Inc., Dcoop, S. Coop. And., and Olives Way LLC

COMPLAINT

### **REQUEST FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Dated: August 18, 2021

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Lauren M. Blas*
Lauren M. Blas (SBN 296823)
Mitchell A. Karlan (*pro hac vice to be requested*)
William J. Moccia (*pro hac vice to be requested*)

Attorneys for Plaintiffs Baltequera Inc., Dcoop, S. Coop. And., and Olives Way LLC