IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BALTEQUERA INC., et al.,

    Plaintiffs,

    v.

BELL-CARTER FOODS, LLC, et al.,

    Defendants.

Case No. 21-cv-06368-MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court is defendants Bell-Carter Foods, LLC ("Bell-Carter Foods"), Bell-Carter Group, Inc. ("Bell-Carter Group"), Timothy T. Carter ("Carter"), and Paul Adcock's ("Adcock") Motion to Dismiss, filed October 25, 2021. Plaintiffs Baltequera Inc. ("Baltequera), Dcoop, S. Coop. And. ("Dcoop"), and Olives Way LLC ("Olives Way") have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

For purposes of the instant motion, the Court assumes the following allegations are true.

In May 2018, during "negotiations" pertaining to a possible investment in Bell-Carter Foods, defendants gave Dcoop and Olives Way an "Excel spreadsheet," prepared by Carter and Adcock, that stated Bell-Carter Foods's "inventory was properly valued at $140 million." (See Compl. ¶ 19.) According to plaintiffs, "[t]he representation about the value of the inventory was not based on reasonable assumptions at the time made"

---

[1] By order filed January 12, 2022, the Court took the matter under submission.

because defendants "knew or were reckless in not knowing that the inventory of [Bell-Carter] Foods included large quantities of aging, perishable fruit that becomes unmarketable with the passage of time and yet was carried on [Bell-Carter] Foods's financial statements at full replacement value." (See Compl. ¶ 20.)

In late June 2018, Carter told Dcoop and Olives Way that he and Adcock were "preparing a 'financial model' with projected financial results for the next three years." (See Compl. ¶ 21.) The following week, in early July 2018, Carter sent Dcoop and Olives Way a "financial forecast" he described as "very conservative," and which document stated Bell-Carter Foods's "EBITDA for the years 2018 through 2021 would be $4.4 million, $9.2 million, $14.1 million, and $15.2 million." (Id.)[2] According to plaintiffs, the projections were not given "in good faith," as they "were not based on reasonable assumptions at the time made." (See Compl. ¶ 22.)

Dcoop and Olives Way "reasonably relied on the May spreadsheet and the July forecasts in deciding to purchase 20% of [Bell-Carter] Foods and in agreeing on the price for that stake." (See Compl. ¶ 23.) Dcoop and Olives Way, however, did not invest directly in Bell-Carter Foods; rather, Baltequera was "created by its two owners for that purpose." (See Compl. ¶ 9.)[3]

On August 21, 2018, Baltequera and Bell-Carter Foods executed a "Purchase Agreement," pursuant to which "Baltequera paid $15 million to acquire 20% of the membership interests in [Bell-Carter] Foods." (See Compl. ¶ 12.) Dcoop and Olives Way "provided the capital to Baltequera with which it made the purchase." (See id.)

The Purchase Agreement included representations by Bell-Carter Foods and Bell-Carter Group, which was Bell-Carter Foods "sole member at the time of the deal," that

---

[2] "EBITDA" is an acronym for "earnings before interest, taxes, depreciation, and amortization." See JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 390 (6th Cir. 2008).

[3] Dcoop and Olives Way each own 50% of Baltequera's common stock. (See Compl. ¶¶ 10-11).

"the financial books and records of [Bell-Carter] Foods and its subsidiaries 'fairly reflect' their 'assets and liabilities'" (see Compl. ¶ 15), and that "[a]ll projections, estimates, financial plans or budgets previously delivered to or made available to [Baltequera] were based on reasonable assumptions in light of all material facts and circumstances at the time made and were provided to [Baltequera] in good faith" (see id. (alterations in original).)  Baltequera "reasonably relied" on those representations, which were "material to Baltequera's decision" to enter into the Purchase Agreement.  (See Compl. ¶¶ 14, 16.)  According to plaintiffs, each of those representations was "false when made" and defendants "knew it to be false or were reckless as to its falsity."  (See Compl. ¶ 14, 16.)

In addition, "contemporaneously" with the execution of the Purchase Agreement, Dcoop and Bell-Carter Foods entered into several "Supply Agreements," under which Dcoop agreed to sell olives to Bell-Carter Foods "for an initial term of . . . three years" (see Compl. ¶ 17), and, "[a]t the same time," the "parties" executed an "Operating Agreement" that provided, "upon either the expiration or termination of the Supply Agreements," Bell-Carter Foods "could 'redeem' Baltequera's 20% stake for its 'fair market value' at the time of the proposed redemption" (see Compl. ¶ 18).

After Baltequera invested $15 million in Bell-Carter Foods, defendants "never again reported the value of their inventory at any level remotely as high as they projected to [p]laintiffs" (see Compl. ¶ 26), and Bell-Carter Food's "actual EBITDA for fiscal years 2018 through 2020" was, respectively, $5 million, $11 million, and $1.9 million, amounts that, according to plaintiffs, were "impossibly far off the projections [d]efendants provided in July 2018" (see Compl. ¶¶ 24, 25).  Further, in June 2020, "[d]efendants" asserted their "immediate right to redeem Baltequera's interests and indicated that those interests had virtually no value."  (See Compl. ¶ 18.)

Based on the above allegations, plaintiffs assert twelve Claims for Relief, titled, respectively, "Violation of § 10(b) of the Exchange Act and Rule 10b-5," "Violation of § 20(a) of the Exchange Act," "Intentional Misrepresentation," "Negligent Misrepresentation," "Fraudulent Concealment," "Violation of Cal. Corp. Code §§ 24501

3

1  and 25501," "Violation of Cal. Corp. Code §§ 25400(d) and 25500," "Violation of Cal.
2  Corp. Code § 25403," "Fraudulent Inducement: Rescission Under Cal. Civ. Code §§ 1688
3  et seq.," "Unfair Competition – Cal. Bus. & Prof. Code §§ 17200 et seq.," "Civil
4  Conspiracy," and "Aiding and Abetting."

## DISCUSSION

6  By the instant motion, defendants seek dismissal of all claims brought on behalf of
7  Dcoop and Olives Way, which plaintiffs, as noted, are the two owners of Baltequera.
8  Specifically, defendants argue, Dcoop and Olives Way lack standing under Article III of
9  the Constitution to bring any of the claims asserted in the Complaint and, in the
10 alternative, that they have failed to allege sufficient facts to state a claim.

**A. Article III Standing**

12 A district court has jurisdiction to consider a plaintiff's claim only where the plaintiff
13 has "[s]tanding to sue" under Article III of the Constitution.  See Spokeo, Inc. v. Robins,
14 578 U.S. 330, 337-38 (2016).  To satisfy Article III's standing requirements, a "plaintiff
15 must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged
16 conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial
17 decision."  See id. at 338.  At the pleading stage, a plaintiff establishes standing by
18 "clearly alleg[ing] facts demonstrating each element."  See id. (internal quotation,
19 omission, and citation omitted).

20 A defendant seeking dismissal for lack of standing may raise a "facial" or "factual"
21 challenge.  See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In
22 a facial attack, the challenger asserts that the allegations contained in a complaint are
23 insufficient on their face to invoke federal jurisdiction," whereas, "in a factual attack, the
24 challenger disputes the truth of the allegations that, by themselves, would otherwise
25 invoke federal jurisdiction."  See id.

26 In the instant case, defendants state they are making a factual challenge, and in
27 support thereof, submit copies of the Purchase Agreement and the Operating Agreement,
28 for the purpose of demonstrating that, of the three plaintiffs, Baltequera is the sole

4

signatory to those agreements. (See Defs.' Mot. Ex. 1 at 38, Ex. 2 at 42.)[4] Relying on the absence of signatures by Dcoop and Olives Way, defendants contend Dcoop and Olives Way have no cognizable injury, and, consequently, lack standing.

In particular, citing Shell Petroleum, N.V. v. Graves, 709 F.2d 593 (9th Cir. 1983), defendants argue Dcoop and Olives Way have not been injured by the loss of Baltequera's investment in Bell-Carter Foods because, as the Ninth Circuit held therein, "[g]enerally, a "shareholder does not have standing to redress an injury to the corporation." See id. at 595-97 (affirming dismissal of suit by stockholder seeking to preclude California Franchise Tax Board from assessing tax against corporation). As the Ninth Circuit further explained, however, a shareholder has standing where it alleges it was "injured directly and independently of the corporation." See id.; see also, e.g., Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530 (1946) (holding "a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong").

Here, the Complaint, as noted, alleges defendants, in May 2018 and July 2018, made false representations directly to Dcoop and Olives Way about the value of Bell-Carter Foods' inventory and projected future earnings (see Compl. ¶¶ 19-22), after which, in August 2018, defendants made false representations to Baltequera (see Compl. ¶¶ 12-16). In Shell, there was no interaction of any kind between the plaintiff stockholder and the defendant prior to the formation of the corporation. Here, by contrast, the claims brought by Dcoop and Olives Way are based on allegedly false representations made directly to them, and, for purposes of Article III, they have sufficiently alleged they were injured by those representations, in light of their allegations that, in reliance thereon, they created Baltequera for the purpose of investing in Bell-Carter Foods (see Compl. ¶¶ 9, 23), that they then provided the capital to fund Baltequera (see Compl. ¶¶ 9-11), and that

---

[4] In citing to the agreements, the Court has used herein the page number affixed to the top of each page by this district's electronic filing program.

5

their investment in Baltequera, has "virtually no value" (see Compl. ¶ 18). Indeed, as discussed later herein, numerous federal courts have allowed actions to proceed on claims virtually identical to those alleged here.

Accordingly, to the extent defendants seek dismissal based on lack of standing, the motion will be denied.

**B. Failure to State a Claim**

As noted, defendants alternatively argue that each of the claims in Complaint, to the extent asserted on behalf of Dcoop and Olives Way, are subject to dismissal for failure to allege sufficient facts to state a cognizable claim.

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

The Court next considers the twelve Claims, in turn.

**1. First and Second Claims for Relief: Federal Securities Statutes/Rule**

In the First Claim for Relief, plaintiffs assert each defendant violated § 10(b) of Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 by making misrepresentations regarding the value of Bell-Carter Foods's "inventory" and "expected future earnings." (See Compl. ¶ 31.)  In the Second Claim for Relief, plaintiffs assert Carter and Adcock violated § 20(b) of the Securities Exchange Act of 1934 by making the above-referenced misrepresentations in their capacity as "control persons" for one or both of the corporate defendants. (See Compl. ¶¶ 37-39.)  Plaintiffs allege that, in reliance on the alleged misrepresentations, they "pa[id] $15 million, through Baltequera, to acquire interests in [Bell-Carter] Foods" (see Compl. ¶¶ 33-34), which investment now has "virtually no value" (see Compl. ¶ 18).

"To state a claim under [§] 10(b) of the Exchange Act and Rule 10b-5, the complaint must plausibly allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Weston Family Partnership LLP v. Twitter, Inc., 29 F.4th 611, 619 (9th Cir. 2022) (internal quotation and citation omitted).  Further, under § 20(b), an individual who "exercise[s] actual power or control" over a corporation that violates § 10(b) can be held liable for the corporation's violation. See id. at 623.

Defendants argue Dcoop and Olives Way have no claims under the above-referenced federal statutes and rule for the asserted reason that neither is a party to the Purchase Agreement and, consequently, did not purchase shares in Bell-Carter Foods. In support of such argument, defendants rely on Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), in which the U.S. Supreme Court held that claims under § 10(b) and Rule 10b-5 are "limited to actual purchasers and sellers of securities." See id. at 730, 749; see also id. at 726-27, 755 (holding plaintiff who alleged that, in reliance on false

statements in prospectus, it "failed to purchase the offered units" could not bring claims under § 10(b) and Rule 10b-5).

As plaintiffs point out, however, numerous courts have found that a plaintiff is treated as a "purchaser," where, as here, (1) a defendant allegedly makes a false representation about a company to the plaintiff, (2) the plaintiff, in reliance thereon, creates and then funds a corporation for the purpose of purchasing stock in the company as to which the false representation was made, (3) the newly-created corporation purchases stock in the subject company, and (4) the newly-created corporation incurs a loss as a result of the purchase. See, e.g., Grubb v. Federal Deposit Ins. Corp., 868 F.2d 1151, 1161-62 (10th Cir. 1989) (holding, where defendant allegedly made false representations "directly" to plaintiff, who, in turn, created and funded "holding company" that subsequently purchased defendant's stock, plaintiff constituted "actual purchaser of [the] stock within the rationale of Blue Chip"); Abbey v. 3F Therapeutics, Inc., 2009 WL 4333819, at *7 (S.D. N.Y. December 2, 2009) (finding, "where a holding company is created for the sole purpose of facilitating an individual's investment in a single company, the investor may be considered the actual purchaser for purposes of the Blue Chip Stamps standing analysis") (listing cases); Sigma Delta, LLC v. George, 2008 WL 11354913, at *2 (E.D. La. February 28, 2008) (finding plaintiffs, to whom defendants allegedly made false representations about stock, were "de facto purchasers" where "purchasing entities were created to facilitate the individual plaintiffs' purchases of [stock] and [p]laintiffs used their own money and credit to capitalize the purchasing entities"). Defendants cite no case holding to the contrary,[5] and the Court, having read and considered the above-cited decisions, finds plaintiffs have sufficiently alleged Dcoop and

---

[5] The sole case on which defendants rely in support of their position, Melcher v. Fried, 2018 WL 2411747 (S.D. Cal. May 29, 2018), does not, unlike the above-cited cases, address the issue raised here. Rather, the plaintiff therein, a limited partner to whom the allegedly false statements were made, did not himself act in reliance on those statements in any manner; instead, the sole reliance was on the part of the partnership. See id. at *1

Olives Way are purchasers for purposes of their claims under federal securities law.

Accordingly, the First and Second Claims for Relief are not subject to dismissal.

**2. Third, Fourth, and Fifth Claims for Relief: Common Law Fraud**

In the Third Claim for Relief, titled "Intentional Misrepresentation," plaintiffs allege each defendant "knowingly or recklessly misrepresented information" regarding the value of Bell-Carter Foods's "inventory" and its "expected future earnings." (See Compl. ¶ 41.) In the Fourth Claim for Relief, titled "Negligent Misrepresentation," plaintiffs allege each defendant "made statements about [Bell-Carter] Foods's financial health and future earnings, without reasonable grounds for believing those statements to be true." (See Compl. ¶ 46.) In the Fifth Claim for Relief, titled "Fraudulent Concealment," plaintiffs allege each defendant, when making representations to plaintiffs about Bell-Carter Foods's "inventory" and "expected future earnings," withheld material facts. (See Compl. ¶¶ 52-53.) As to each such claim, plaintiffs further allege that, in reliance on the alleged misrepresentation and/or concealment, they invested, "through Baltequera," in Bell-Carter Foods (see Compl. ¶¶ 43, 48, 54), an investment now having "virtually no value" (see Compl. ¶ 18).

Defendants argue that because Dcoop and Olives Way are not parties to the Purchase Agreement, they cannot base common law fraud claims on false statements and omissions that were allegedly made to them. In support thereof, defendants rely on district court cases applying California caselaw holding "[a] person who is not a party to a contract" cannot assert "tort claims based on the contractual relationship." See Ambers v. Wells Fargo Bank, N.A., 2014 WL 883752, at *2, *4-5 (N.D. Cal. March 3, 2014); see also Brockington v. J.P. Morgan Chase Bank, 2009 WL 1916690, at *2-3 (N.D. Cal. July 1, 2009) (dismissing fraudulent concealment claim alleging failure to disclose "true monthly mortgage obligation," where plaintiff "was not a party to the loan").

As plaintiffs point out, however, the common law claims brought here by Dcoop and Olives Way, in contrast to those brought by the plaintiffs in the above-cited two cases, are not dependent on a contract, in this instance, the contract between Bell-Carter

9

1 Foods and Baltequera, but, rather, on statements made to them before that contract was
2 executed, and, as plaintiffs further point out, the California Supreme Court, much like the
3 authorities cited above with respect to plaintiffs' federal claims, has held that although,
4 "[g]enerally, a stockholder may not maintain an action [for fraud] in his own behalf for a
5 wrong done by a third person to the corporation on the theory that such wrong devalued
6 his stock," such stockholder may bring an "individual action" based on "fraud affecting
7 him directly." See Sutter 28 Cal. 2d at 530.  In particular, in Sutter v. General Petroleum
8 Corp., the California Supreme Court found an "individual action" cognizable where the
9 plaintiff, in reliance on allegedly false representations, created and funded a corporation
10 that purchased equipment from the defendant, an investment that was "rendered
11 worthless" as "a result of the fraud," see id. at 527-28, 531, and, while noting the
12 corporation "suffered injury," see id. at 531, further noted the "fraud was practiced on [the
13 plaintiff] in the first instance and he was induced to form the corporation . . . and invest
14 his money by reason of th[e] fraud," see id. at 531-32.
15       Here, as discussed above, plaintiffs similarly allege Dcoop and Olives Way were,
16 by reason of defendants' allegedly false misrepresentations, induced to create and fund
17 Baltequera, and that after Baltequera purchased stock in Bell-Carter Foods, the stock
18 became "virtually" worthless.  In other words, although the alleged devaluation of
19 Baltequera's investment constitutes an injury to the corporation, Dcoop and Olives Way
20 suffered a direct loss as well.  See id.
21       Accordingly, the Third, Fourth, and Fifth Claims for Relief are not subject to
22 dismissal.
23 **3. Sixth, Seventh, and Eighth Claims for Relief: Corporate Securities Act**
24       In the Sixth, Seventh, and Eighth Claims for Relief, plaintiffs allege defendants
25 violated three statutes included in the California Corporate Securities Act of 1968.
26       In the Sixth Claim for Relief, plaintiffs allege defendants violated § 25401 of the
27 California Corporations Code, which prohibits any person from offering or selling a
28 security "by means of any written or oral communication that includes an untrue

1  statement of a material fact or omits to state a material fact." See Cal. Corp. Code
2  § 25401.  In the Seventh Claim for Relief, plaintiffs allege defendants violated § 25400,
3  which prohibits any person offering or selling a security from "mak[ing], for the purpose of
4  inducing the purchase . . . of such security by others, any statement which was, at the
5  time and in the light of the circumstances under which it was made, false or misleading
6  with respect to any material fact, or which omitted to state any material fact." See Cal.
7  Corp. Code § 25400(d).  In the Eighth Claim for Relief, plaintiffs allege each defendant
8  "knowingly provided substantial assistance to the other [d]efendants in connection" with
9  the above-referenced statutory violations, in violation of § 25403, which prohibits a
10  person from "knowingly provid[ing]" such assistance.  See Cal. Corp. Code § 25403(b).

   Defendants argue that, to the extent plaintiffs' claims under the Corporate Securities Act are asserted on behalf of Dcoop and Olives Way, the claims are subject to dismissal for lack of statutory standing.

   With respect to § 25401, the Court agrees.  In particular, although, as plaintiffs point out, the Corporate Securities Act is "modeled" after provisions of federal securities statutes, see People v. Simon, 9 Cal. 4th 493, 509-10 (1995), the California Supreme Court has expressly held a private cause of action for a violation of § 25401 can only be brought by a person in "privity of contract" with the defendant, see Mirkin v. Wasserman, 5 Cal. 4th 1082, 1104 (1993).  As plaintiffs acknowledge, the relevant contract here, namely, the Purchase Agreement, is signed only by Baltequera.  Consequently, as neither Dcoop nor Olives Way entered into a contract to invest in Bell-Carter Foods, Dcoop and Olives Way lack statutory standing to bring a claim under § 25401.

   With respect to § 25400, however, the California Supreme Court has held privity of contract is not "require[d]."  See id.  Consequently, Dcoop and Olives Way's claim under § 25400 is not barred by the absence of a contract between them and Bell-Carter Foods.

   Lastly, Dcoop and Olives Way's claim under § 25403 fails, as "no private cause of action exists under [§] 25403."  See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 255 (2007) (explaining "private remedies for violation of code

11

1  provisions in the 25400 series [of the Corporate Securities Act], which are penal in
2  nature, exist only by virtue of corresponding provisions in the 25500 series"; observing
3  Legislature did not create "a private right of action for a violation of [§] 25403, as [it did]
4  for other specified provisions of the [Corporate Securities] Act").

5  Accordingly, to the extent the Sixth and Eighth Claims for Relief are brought on
6  behalf of Dcoop and Olives Way, those Claims are subject to dismissal, and, to the extent
7  the Seventh Claim for Relief is brought on behalf of Dcoop and Olives Way, the Claim is
8  not subject to dismissal.

9  **4. Ninth Claim for Relief:  Rescission**

10  In the Ninth Claim for Relief, titled "Fraudulent Inducement: Rescission Under Cal.
11  Civ. Code §§ 1688 et seq.," plaintiffs assert they are entitled to the remedy of rescission
12  of the Purchase Agreement.

13  Although the parties cite conflicting authority as to whether "rescission" is a
14  recognized cause of action, compare Nakash v. Superior Court, 196 Cal. App. 3d 59, 70
15  (1987) (holding "[r]escission is not a cause of action; it is a remedy") with Merced County
16  Mut. Fire Ins. Co., 233 Cal. App. 3d 765, 775 (1991) (finding, under facts alleged, plaintiff
17  "has or can state a cause of action for rescission), the Court need not address such issue
18  herein, as Dcoop and Olives Way are not parties to the Purchase Agreement, and,
19  consequently, as to them, there is no contract for them to rescind.

20  Accordingly, to the extent the Ninth Claim for Relief is brought on behalf of Dcoop
21  and Olives Way, the Claim is subject to dismissal.

22  **5. Tenth Claim for Relief:  Unfair Competition**

23  In the Tenth Claim for Relief, titled "Unfair Competition – Cal. Bus & Prof. Code
24  §§ 17200 et seq.," plaintiffs allege defendants have engaged in unfair, unlawful, and
25  fraudulent business practices, specifically, making false representations about Bell-Carter
26  Foods's "inventory" and "expected future earnings.' (See Compl. ¶¶ 82-84.)

27  Defendants argue the Tenth Claim for Relief is subject to dismissal for the reason
28  that plaintiffs fail to allege Dcoop and Olives Way were injured by the assertedly false

representations.

As the Tenth Claim for Relief is, as pleaded, entirely derivative of the First through Ninth Claims for Relief, the Tenth Claim, to the extent it is brought on behalf of Dcoop and Olives Way and based on the Sixth, Eighth, and Ninth Claims for Relief, is subject to dismissal, and to the extent it is based on the First through Fifth Claims for Relief and Seventh Claim for Relief, is not subject to dismissal.

**6. Eleventh and Twelfth Claims for Relief:  Conspiracy/Aiding and Abetting**

In the Eleventh Claim for Relief, titled "Civil Conspiracy," plaintiffs allege each defendant "agreed, expressly or tacitly, to the commission of the wrongful acts alleged" (see Compl. ¶ 91), and, in the Twelfth Claim for Relief, titled "Aiding and Abetting," allege each defendant "necessarily acted with knowledge of the others' unlawful conduct and provided substantial assistance and encouragement to the other [d]efendants in their commission of those wrongful acts" (see Compl. ¶ 96)

Under California law, claims for civil conspiracy and for aiding and abetting fail in the absence of an underlying civil wrong.  See Unruh v. Truck Ins. Exchange, 7 Cal. 3d 616, 631 (1972) (holding "[a] civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damages"); Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574-75 (2005) (affirming order granting summary judgment as to "claims of civil conspiracy and aiding and abetting" where plaintiff could not establish "underlying tort").

Here, the Eleventh and Twelfth Claims for Relief, to the extent they are brought on behalf of Dcoop and Olives Way and based on the Sixth, Eighth, and Ninth Claims for Relief, are subject to dismissal, and to the extent they are based on the First through Fifth Claims for Relief and Seventh Claim for Relief, are not subject to dismissal.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent defendants seek dismissal of the Sixth, Eighth and Ninth Claims

13

for Relief, as asserted on behalf of Dcoop and Olives Way, the motion is GRANTED.

2. To the extent defendants seek dismissal of the Tenth, Eleventh, and Twelfth Claims for Relief, as asserted on behalf of Dcoop and Olives Way and based on the Sixth, Eighth, and Ninth Claims for Relief, the motion is GRANTED.

3. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 4, 2022

MAXINE M. CHESNEY
United States District Judge

14